1   Richard P. Doyle, Jr. (State Bar No. 112459)
    JANSSEN DOYLE, LLP
2   40 Brookwood Road, Suite 102,
    Orinda, CA 94563-3043
3   Telephone:    (925) 295-1805
    Facsimile:    (925) 295-1801
4   rdoyle@jd-law.com

5   René P. Tatro (Bar No. 78383)
    Steven R. Tekosky (State Bar No. 102918)
6   TATRO TEKOSKY SADWICK LLP
    660 South Figueroa Street, Suite 1450
7   Los Angeles California  90017
    Telephone:    (213) 225-7171
8   Facsimile:    (213) 225-7151
    ReneTatro@ttsmlaw.com

9

10  Attorney for Plaintiffs/Relators

11              UNITED STATES DISTRICT COURT

        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  United States of America, ex rel. Robert          Civil Action No: 06-06303 CRB
    Lalley, Courtney Davis and William
13  Manos, individuals; State of California, ex
    rel. Robert Lalley, Courtney Davis, and
14  William Manos; State of Illinois, ex rel.        **AMENDED COMPLAINT FOR**
    Robert Lalley, Courtney Davis, and              **DAMAGES  (FALSE CLAIMS ACT, 31**
15  William Manos; State of Florida, ex rel.        **U.S.C. § 3729 et seq.); RELATED STATE**
    Robert Lalley, Courtney Davis, and              **CAUSES OF ACTION AND DEMAND**
16  William Manos; State of Texas, ex rel.          **FOR JURY**
    Robert Lalley, Courtney Davis, and
17  William Manos; State of Georgia, ex rel.
    Robert Lalley, Courtney Davis, and
18  William Manos; State of Tennessee, ex rel.
    Robert Lalley, Courtney Davis, and
19  William Manos; State of Virginia, ex rel.
    Robert Lalley, Courtney Davis, and                   **DOCUMENT SUBMITTED**
20  William Manos; State of Massachusetts, ex
    rel. Robert Lalley, Courtney Davis, and
21  William Manos; State of Michigan, ex rel.
    Robert Lalley, Courtney Davis, and
22  William Manos and State of New York, ex
    rel. Robert Lalley, Courtney Davis, and
23  William Manos
                    Plaintiffs
24
         vs.
25
    Novartis Vaccines and Diagnostics, Inc.;
26  and Express Scripts, Inc. (fdba Priority
    Healthcare Corporation),
27              Defendants.

28

FILED

NOV 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

RECEIVED

NOV 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JANSSEN DOYLE, LLP

                          1
AMENDED COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 et seq.);
              RELATED STATE CLAIMS AND DEMAND FOR JURY

1    Richard P. Doyle, Jr. (State Bar No. 112459)
     JANSSEN DOYLE, LLP
2    40 Brookwood Road, Suite 102,
     Orinda, CA 94563-3043
3    Telephone:    (925) 295-1805
     Facsimile:    (925) 295-1801
4    rdoyle@jd-law.com

5    René P. Tatro (Bar No. 78383)
     Steven R. Tekosky (State Bar No. 102918)
6    TATRO TEKOSKY SADWICK LLP
     660 South Figueroa Street, Suite 1450
7    Los Angeles California  90017
     Telephone:  (213) 225-7171
8    Facsimile:  (213) 225-7151
     ReneTatro@ttsmlaw.com
9
10   Attorney for Plaintiffs/Relators

11                  UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12   United States of America, ex rel. Robert        Civil Action No:  06-06303 CRB
     Lalley, Courtney Davis and William
13   Manos, individuals; State of California, ex
     rel. Robert Lalley, Courtney Davis, and
14   William Manos; State of Illinois, ex rel.        **AMENDED COMPLAINT FOR**
     Robert Lalley, Courtney Davis, and              **DAMAGES  (FALSE CLAIMS ACT, 31**
15   William Manos; State of Florida, ex rel.         **U.S.C. § 3729 *et seq.*); RELATED STATE**
     Robert Lalley, Courtney Davis, and              **CAUSES OF ACTION AND DEMAND**
16   William Manos; State of Texas, ex rel.           **FOR JURY**
     Robert Lalley, Courtney Davis, and
17   William Manos; State of Georgia, ex rel.
     Robert Lalley, Courtney Davis, and
18   William Manos; State of Tennessee, ex rel.
     Robert Lalley, Courtney Davis, and
19   William Manos; State of Virginia, ex rel.
     Robert Lalley, Courtney Davis, and
20   William Manos; State of Massachusetts, ex
     rel. Robert Lalley, Courtney Davis, and
21   William Manos; State of Michigan, ex rel.
     Robert Lalley, Courtney Davis, and
22   William Manos and State of New York, ex
     rel. Robert Lalley, Courtney Davis, and
23   William Manos
                        Plaintiffs
24
25            vs.

26   Novartis Vaccines and Diagnostics, Inc.;
     and Express Scripts, Inc. (fdba Priority
     Healthcare Corporation),
27                      Defendants.

28

                                        1

JANSSEN DOYLE, LLP

JANSSEN DOYLE, LLP

1    Plaintiff United States of America ex rel. Robert M. Lalley, Courtney Davis and William

2    Manos (hereafter, "Qui Tam Plaintiffs/Relators"); State of California, ex rel. Robert Lalley,

3    Courtney Davis, and William Manos; State of Illinois, ex rel. Robert Lalley, Courtney Davis, and

4    William Manos; State of Florida, ex rel. Robert Lalley, Courtney Davis, and William Manos;

5    State of Texas, ex rel. Robert Lalley, Courtney Davis, and William Manos; State of Georgia, ex

6    rel. Robert Lalley, Courtney Davis, and William Manos; State of Tennessee, ex rel. Robert

7

8    Lalley, Courtney Davis, and William Manos; State of Virginia, ex rel. Robert Lalley, Courtney

9    Davis, and William Manos; State of Massachusetts, ex rel. Robert Lalley, Courtney Davis, and

10   William Manos; State of Michigan, ex rel. Robert Lalley, Courtney Davis, and William Manos;

11   and State of New York, ex rel. Robert Lalley, Courtney Davis, and William Manos (when

12   referred to collectively, the "States") for their complaint against the defendants Novartis Vaccines

13   and Diagnostics, Inc. and Express Scripts, Inc. (when referred to collectively, "Defendants")

14
15   allege:

16                            **JURISDICTION AND THE PARTIES**

17        1.      Qui Tam Plaintiff/Relator Robert M. Lalley was Director of National Accounts for

18   Chiron Corporation, and resides at 1052 Greymoor Road, Birmingham, AL 35242.

19        2.      Qui Tam Plaintiff/Relator Courtney Davis was a National Account Manager for

20   Chiron Corporation and resides at 248 Valley Street, Pembroke, MA 02359

21        3.      Qui Tam Plaintiff/Relator William Manos was Chiron Corporation's Area

22   Business Manager – Los Angeles North and resides at 24140 Mentry Drive, Santa Clarita, CA

23   91321-3947.

24        4.      Plaintiffs State of California, State of Illinois, State of Florida, State of Texas,

25   State of Georgia, State of Tennessee, State of Virginia, State of Massachusetts, State of

26   Michigan, and State of New York (collectively, "the State Plaintiffs"), were, at all times herein

27   mentioned, states within the United States which were harmed by the conduct of Defendant

28
                                         2
─────────────────────────────────────────────
     AMENDED COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.*);
                    RELATED STATE CLAIMS AND DEMAND FOR JURY

1    Novartis Vaccines & Diagnostics, Inc. (Novartis) as herein alleged, in a like manner that harm

2    was done, and continues to be done, to the United States as herein described.  As alleged more

3    specifically herein, the State Plaintiffs, Novartis wrongfully billed the State Plaintiffs in the same

4    or substantially similar manner as it did the United States (as herein alleged) for pharmaceutical

5    drugs provided by Novartis; and Novartis received reimbursement from the State Plaintiffs for

6    those wrongfully  billed drugs.  The requests for reimbursement by Novartis were likewise

7    improper and in violation of law, and harmed the State Plaintiffs and their citizens receiving

8    services under Medicaid programs and other health benefit programs, funded in whole or in part

9    by each of the State Plaintiffs.

10          5.      Defendant Novartis Vaccines and Diagnostics, Inc. ("Novartis") is a Delaware

11    corporation which has its principal place of business in New Jersey.  Chiron Corporation

12    ("Chiron"), which was acquired by Novartis, has its principal place of business in Emeryville,

13    CA.  Both are referred to collectively herein as "Chiron."

14          6.      Defendant Express Scripts, Inc. ("Express Scripts") is a Delaware corporation

15    which has its principal place of business in St. Louis, MO.  Priority Healthcare Corporation

16    ("Priority Healthcare"), the entity referred to herein, was acquired by Express Scripts, Inc.  Both

17    are referred to collectively herein as Priority Healthcare.

18          7.      Defendant Novartis (and its predecessor, Chiron) is and was in the business,

19    among other things, of manufacturing and promoting a pharmaceutical drug known as

20    tobramycin under the trademark TOBI.

21          8.      Defendant Express Scripts (and its predecessor Priority Healthcare) is and was in

22    the business, among other things, of obtaining government reimbursement for Chiron's off-label

23    prescriptions of TOBI, as herein described.

24          9.      This Court has jurisdiction over this matter pursuant to the False Claims Act,

25    particularly 31 U.S.C. § 3730(b), in that the claims for relief there under set forth in this action

26    are brought by private persons in the name of the United States government; this Court further

27    has federal question jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331.  There is

28    pendent jurisdiction over the state law claims which are pleaded in this action because: (1) the

JANSSEN DOYLE, LLP

3

1   federal claim is sufficiently substantial to confer federal jurisdiction; and (2) there is common

2   nucleus of operative fact between the state and federal claims, in that Novartis obtained, at the

3   same times, wrongful reimbursement (as described herein) from both the United States and the

4   plaintiff States.

5      10.   Venue is proper pursuant to 28 U.S.C. § 1391(a), in that defendant Novartis

6   conducts business in this judicial district, and the other defendants resided in this judicial district

7   at the time of the activities pled in this Complaint.

8      11.   As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), the Relators have

9   provided to the United States Attorney for the Northern District of California a statement of

10   material evidence and information related to this Complaint. This is a case where Defendants

11   improperly created a demand for a pharmaceutical product manufactured by Chiron under the

12   trademark TOBI through violations of the Food, Drug, and Cosmetics Act ("FDCA"), then

13   submitted to the government for reimbursement bills from the sale of the product, not otherwise

14   payable, without disclosing to the government that the demand had been generated through

15   violations of the FDCA.

16      12.   Under the FDCA, pharmaceutical drug companies cannot distribute a drug in

17   interstate commerce unless the Food and Drug Administration ("FDA") has approved its use.

18   The FDA approves pharmaceutical drugs for marketing for one or more specific uses, and

19   establishes recommended dosages for those uses.  When the FDA approves a drug for marketing

20   and sale, it also approves the labeling for the drug, which explains the manner in which the

21   medication may be marketed as safe and effective.  Use of an approved drug for any purpose

22   other than those specifically contained in the label is referred to as an "off-label" use.

23      13.   The FDCA does not prohibit physicians from prescribing an FDA approved drug

24   for off-label uses.  The FDCA does, however (except in certain situations not relevant here),

25   prohibit drug manufacturers from marketing or promoting a drug for off-label uses, pursuant to

26   statutory authority including 21 U.S.C. §§ 331 and 352.

27      14.   While physicians may and do prescribe drugs for uses other than uses contained in

28   the label, a pharmaceutical company, such as Chiron, may not promote a product as safe and

JANSSEN DOYLE, LLP

4

JANSSEN DOYLE, LLP

1    effective beyond its indicated use.

2        15.    Pursuant to 42 U.S.C. § 1396r-8(k)(3), federal and state health care programs, such

3    as Medicaid and Medicare, have strict limitations on the circumstances under which they will

4    reimburse the cost of drugs prescribed for off-label uses.

5                          **BACKGROUND AS TO TOBI**

6        16.    This Complaint concerns the promotion and sale of a pharmaceutical known as

7    TOBI, which is approved for the treatment of a particular type of lung infection in certain

8    patients with cystic fibrosis.

9        17.    Cystic fibrosis (hereafter "CF") is a genetic disease affecting approximately 30,000

10   children and adults in the United States. CF causes the body to produce abnormally thick, sticky

11   mucus that clogs the lungs and obstructs the pancreas. According to the CF Foundation's

12   National Patient Registry, the median age of survival for a person with CF is 33.4 years.

13       18.    In the late 1990s, PathoGenesis Corporation of Seattle, Washington

14   ("PathoGenesis") developed TOBI as tobramycin for inhalation. In particular, on December 22,

15   1997, the U.S. Food and Drug Administration approved TOBI for marketing and sale under new

16   drug application NDA 50-753 as a drug device combination for the management of P. aeruginosa

17   in certain CF patients.

18       19.    The FDA-approved version of TOBI was a 300 mg solution of tobramycin as 60

19   mg/ml in 5 ml in 0.225 N saline for inhalation administered via a particular nebulizer (the Pari

20   LC Plus jet nebulizer) using a particular power source to create the aerosol (the DeVillbus

21   Pulmoaide compressor).

22       20.    In particular, TOBI was approved for marketing and sale following clinical trials

23   of patients chronically infected with the bacteria P. aeruginosa, who were otherwise stable upon

24   admission into the trial, having lung functions between 25% and 75% predicted and who were 6

25   years of age and older.

26       21.    TOBI immediately became the industry standard for the management of P.

27   aeruginosa in CF patients when using a tobramycin solution for inhalation.

28       22.    The FDA's approval prohibits, without deviation, the marketing of TOBI through

5

JANSSEN DOYLE, LLP

1   advertising or representations regarding any of the following:

2       a.   The safety and efficacy of any dose other than 300 mg as 60 mg/ml in 5 ml,

3       b.   The use of TOBI with any nebulizer delivery system other than the PARI LC

4            Plus jet nebulizer and the DeVillbus Pulmoaide compressor,

5       c.   The use of TOBI by children under the age of 6,

6       d.   The use of TOBI in patients with lung function greater than 75%,

7       e.   The use of TOBI in patients not chronically infected with P. aeruginosa, and

8       f.   The use of TOBI for non-CF patients.

9

10                    **BACKGROUND AS TO THE QUI TAM PLAINTIFF/RELATORS**

11      23.    Chiron acquired PathoGenesis on or about August 14, 2000 and thereby acquired

12   the rights to TOBI.

13      24.    Thereafter, Chiron entered into employment agreements with each of the Relators

14   whereby the Relators, as employees, were to render professional services, including the

15   promotion and sale of TOBI, as well as obtaining payment by the U.S. Government through its

16   federal assistance programs, primarily related to TOBI.

17      25.    Reimbursement issues related to TOBI included fact that the price of TOBI is

18   significantly higher than the price of generic tobramycin that might be prescribed and used for

19   inhalation.

20      26.    During their employment, the Relators attended sales meetings in which they and

21   the Chiron sales force were instructed by Chiron to promote off-label uses of TOBI.

22      27.    During their employment, the Relators learned of fraudulent activities by

23   Defendants with respect to reimbursement for off-label uses of TOBI, as described below.

24      28.    In particular, Chiron implemented a strategic marketing plan such that TOBI

25   would be aggressively marketed to treat a wide array of ailments for which, and patients for

26   whom, the FDA did not approve the drug as safe and effective.  In particular, the company

27   promoted TOBI for the treatment of lung diseases not associated with CF, including

28   bronchiectasis ("BE") and ventilator assisted pneumonia ("VAP"), and promoted TOBI as a

6

JANSSEN DOYLE, LLP

1   first-line treatment for children not chronically infected with P. aeruginosa and/or with lung

2   function greater than 75% ("Early Intervention"), and for those below the age of six ("Under

3   Six"), as a means to increase its sales of TOBI.

4         29.   In 2002, Chiron hired David Happel, who had a known history of involvement

5   with alleged improper marketing and promotion for off-label use of pharmaceutical drugs.  For

6   example, Mr. Happel had managed a business, which the Department of Justice investigated, and

7   later sued, for improper marketing and promotion of pharmaceuticals for off-label use.

8         30.   Shortly after Mr. Happel joined Chiron, the company implemented new off-label

9   promotion and marketing policies for TOBI.  Mr. Happel also developed a team of managers to

10   assist in the sales and promotion of off-label uses for TOBI.

11         31.   Jennifer Stroman, a Chiron employee, was promoted to Product Manager in 2002.

12   By organizational structure, Ms. Stroman reported directly to Brian Unger, Pulmonology Product

13   Director, but in practice reported to Mr. Happel.

14         32.   Ms. Stroman was in charge of development and implementation of TOBI speaker

15   programs.  She also provided direct instruction to the sales representatives through memoranda,

16   training directives, and presentations as to how they were to promote the programs and services

17   described herein.

18         33.   Burt Kiethley, a Chiron employee, was in charge of the Pulmonology sales group

19   in 2005.  Under his direction, sales representatives were required to conduct the off-label sales

20   campaign developed and directed by Mr. Happel and Ms. Stroman.

21         34.   Joe Regan, a Chiron employee, was the acting Vice President of BioPharma Sales

22   (Oncology & Pulmonology) from October 2004 to December 2005.  Under his watch, sales

23   representatives were directed to conduct the off-label sales campaign previously described.  Mr.

24   Regan authorized and directed the Chiron oncology sales representatives to be trained to sell

25   TOBI, and had them make direct sales calls to non-CF physicians to sell TOBI.

26         35.   Chiron's strategy was to enhance the demand for TOBI through violations of the

27   FDCA.  This demand, which was the result of illegal, fraudulent and improper activity by

28   Chiron, in turn resulted in the false claims complained of herein.  Chiron's tactics included the

7

following, among other things:

    a.    Chiron's business plans and incentive programs were to market and promote TOBI (and thereby increase it sales) for off-label applications.

    b.    Toward this end, Chiron promoted selling TOBI to Office Based Pulmonologists ("OBP"). OBP sales, by their very nature, are known to be heavily weighted toward off-label uses, since Office Based Pulmonologists generally do not treat CF patients. Most CF patients are treated at CF centers, not by Office Based Pulmonologists.

    c.    As part of, and to further, its illegal marketing and promotion scheme, Chiron provided to its sales representatives lists of potential doctors, typically pulmonologists, who did not have exclusively CF patients. Again, by targeting this doctor base, Chiron knew that most, if not all, of the prescription demand generated thereby would be off-label.

    d.    As part of, and to further, its illegal marketing and promotion scheme, Chiron provided training to its sales representatives in the off-label disease conditions to be targeted with TOBI. This training included, among other things, providing sales representatives with studies about off-label uses of TOBI (which the sales representatives were told to destroy or return to Chiron after review). The training also included scripted inquiries in which the sales representatives were coached to engage physicians in discussions regarding off-label applications. The training also included presentations to coach the sales representatives in how to guide the off-label discussions with physicians.

    e.    To facilitate these illicit sales, Chiron created a special database, called EDGE, for use by sales representatives. The database contained data on doctors so Chiron could track the success of its off-label sales and activities. The database was managed by Chiron's sales operations unit and marketing department.

    f.    As part of, and to further, its illegal marketing and promotion scheme, Chiron's sales representatives were taught to, and did, hide off-label promotions in the EDGE computer database by calling those activities "OBP."

8

JANSSEN DOYLE, LLP

g.     Because Chiron knew that getting reimbursement from governmental agencies for off-label prescriptions was difficult (but necessary to monetize its scheme, since the cost of TOBI was too high – $3,000 to $4,000 *per month* – for most consumers to bear without reimbursement), to reap the benefits of its efforts to artificially and illegally enhance the demand for TOBI in off-label applications (and to snowball that demand even further), Chiron needed to take steps to assure that the largest volume possible of its burgeoning off-label demand was reimbursed by governmental agencies. For that reason, and as part of, and to further, its illegal marketing and promotion scheme, Chiron orchestrated a scheme whereby Defendant Express Scripts, dba Priority Healthcare, which specialized (among other things) in facilitating reimbursement requests to governmental agencies for off-label prescriptions, was retained to assist Chiron's sales representatives who were dealing with patients who had received prescriptions for predominately off-label uses. The sales representatives were urged by Chiron to tell these patients to process their prescriptions through Priority Healthcare.

h.     As part of, and to further, its illegal marketing and promotion scheme, Chiron encouraged its sales representatives to provide one-on-one sales pitches to physicians about off-label uses of TOBI, in the absence of prior inquiry concerning such uses by doctors.

i.     As part of, and to further, its illegal marketing and promotion scheme, Chiron provided its sales representatives with marketing materials (some of which were called, ironically – but accurately – "cheat sheets") about off-label promotion. Chiron also instructed its sales people to destroy and or to return certain of those documents to Chiron management.

j.     As part of, and to further, its illegal marketing and promotion scheme, Chiron required as a condition of continued employment that its sales representatives make non-CF or OBP sales calls. Chiron required sales persons to spend 10% to 30% of their time calling on physicians in off-label areas, such as OBPs and non-CF center

9

JANSSEN DOYLE, LLP

JANSSEN DOYLE, LLP

1   physicians who were unlikely to have CF patients or to have CF patients for whom TOBI

2   had been approved by the FDA.

3         k.      As part of, and to further, its illegal marketing and promotion scheme,

4   Chiron provided monetary incentives to sales representatives to participate in off-label

5   promotion of TOBI through the use of reimbursement forms (known as "BIRFs"), which

6   became a marketing program that paid incentives to sales persons for increased sales due

7   to off-label promotion.

8         l.      As a further part of its scheme to illegally enhance demand for TOBI by

9   off-label marketing and promotion, when Chiron sales representatives approached the

10  physician community to promote off-label uses (as the sales representatives were

11  required to do), they were instructed by Chiron to "hook" the OBP by providing free

12  samples of TOBI for patients to try for off-label uses. These free sample programs for

13  off-label uses sometimes were referred to as Professional Courtesy Packages. The

14  purpose was to induce physicians to develop a sufficient comfort level with TOBI for off-

15  label indications that the doctors would prescribe it for such purposes.

16        m.      As part of, and to further, its illegal marketing and promotion scheme,

17  Chiron instructed its sales representatives to present physicians with papers (or

18  information about such papers) on BE and VAP. TOBI is not approved for management

19  of either of these diseases. Moreover, these diseases are not unique to CF victims. As

20  part of its instructional program to illegally enhance the demand for TOBI through off-

21  label marketing and promotion, Chiron conducted role-playing discussions with its sales

22  people prior to sales calls for off-label indications.

23        n.      As part of, and to further, its illegal marketing and promotion scheme,

24  Chiron instructed its sales people to tell doctors that TOBI reduces hospital stays and

25  reduces exacerbations in patients hospitalized for respiratory problems, but did not

26  instruct its sales representatives to expressly qualify that as being in connection with the

27  management of P. aeruginosa in CF patients within a specific age range and within a

28  specific lung function range. Chiron also instructed its sales representatives to tell

10

AMENDED COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.*);
RELATED STATE CLAIMS AND DEMAND FOR JURY

1    doctors that TOBI has studies in CF and demonstrated a successful track record, but did

2    not instruct its sales representatives to expressly qualify that as a being in connection with

3    the management of P. aeruginosa in CF patients within a specific age range and within a

4    specific lung function range. Chiron also instructed its sales representatives to explain to

5    doctors – including those such as OBPs and non-CF center doctors who were known to

6    be unlikely to be managing P. aeruginosa in CF patients of the approved age range and

7    lung function range – that while TOBI was more expensive, it would save money based

8    on the length of stay at hospitals and frequency of stays in hospitals.

9         o.    As part of, and to further, its illegal marketing and promotion scheme,

10   Chiron conducted sales meetings where off-label sales of TOBI were reported, discussed,

11   and promoted.

12        p.    As part of, and to further, its illegal marketing and promotion scheme,

13   Chiron required its sales persons to profile physicians in off-label areas such as BE and

14   newborns with pseudomonas lung infections.

15        q.    As part of, and to further, its illegal marketing and promotion scheme,

16   Chiron made false or misleading statements to health care professionals regarding

17   TOBI's efficacy for off-label uses, by representing that TOBI's safety within its

18   indication implied that it was safe for other indications. If a physician pressed with a

19   question about whether TOBI had been approved by the FDA for such off-label uses,

20   Chiron instructed its sales representatives to respond by providing a clinical trial that

21   occurred with TOBI in BE and a clinical retrospective study in VAP, both of which were

22   sponsored by Chiron, and neither of which had been vetted with the FDA or submitted to

23   the FDA in connection with efforts to get TOBI approved for such off-label uses. For

24   example, Chiron initiated a phase two safety study to determine if TOBI can improve the

25   symptoms of extreme BE. The initial results showed that TOBI did not provide the same

26   benefits in patients with BE as seen in patients as studied with CF. This distinction was

27   not shared with physicians whom Chiron was encouraging to prescribe TOBI for off-

28   label indications.

11

AMENDED COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.*);
RELATED STATE CLAIMS AND DEMAND FOR JURY

JANSSEN DOYLE, LLP

1           r.     As part of, and to further, its illegal marketing and promotion scheme,

2    Chiron sponsored purportedly "independent medical education" events facilitating and

3    encouraging off-label TOBI uses with extensive input from Chiron regarding topics,

4    speakers, content, and participants.

5         36.    Chiron also assisted in obtaining federal reimbursement for these off-label

6    indications, which it had actively promoted, in a false and misleading manner.  These activities

7    have included:

8            a.     Institutionalizing sales of off-label uses of TOBI by maintaining and

9    providing forecasts for both CF uses and non-CF uses of TOBI.  To meet sales

10   expectations it was necessary to promote and sell TOBI for off-label uses.  In other

11   words, sales representatives were expected to sell a certain number of cartons of TOBI

12   for both CF and non-CF indications.

13           b.     Contracting with Priority Healthcare to assist doctors in obtaining

14   reimbursement, and, in particular, improperly to obtain federal reimbursement for the off-

15   label uses of TOBI.

16           c.     Working with Priority Healthcare to gain "adjudication" (reimbursement)

17   for off-label prescriptions, including off-label prescriptions generated through the illegal

18   and improper marketing and advertising of TOBI, which was not disclosed to the

19   government.

20        37.    These tactics were part of a widespread, coordinated, national effort to implement

21   an off-label marketing plan and create a demand for TOBI which would not have existed had

22   Chiron complied with the FDCA.  Many of the TOBI sales thus generated were submitted to the

23   government for reimbursement, without disclosing their false and fraudulent nature:  that is, that

24   the reimbursement submissions were for prohibited off-label uses, and that these uses had been

25   knowingly, unlawfully and fraudulently promoted and marketed by Chiron. At the same time it

26   was engaging in the aforementioned conduct, Chiron decided not to seek FDA approval for any

27   of the off-label uses and, in fact, abandoned scientific research related to such uses.

28        38.    While Chiron was engaging in the acts complained of herein resulting in false

1    claims being submitted for reimbursement, it also was drastically increasing the price of the

2    product, which, of course, materially increased the amount of the false claims and damages

3    flowing there from.  Since it bought PathoGenesis, Chiron has doubled the wholesale price of

4    TOBI through 5-6% average price increases every six months.  Thus the wholesale price of

5    TOBI for a month supply today is over $3,500.

6            39.    In or about the Fall of 2005, Relator Robert Lalley had knowledge that Chiron's

7    conduct, as set forth above, was a violation of Federal law, and that it was thereby falsely and

8    fraudulently generating a demand for prescriptions which were then submitted to the government

9    for reimbursement through federal assistance programs.  At that time, Relator Robert Lalley

10   verbally informed Chiron, and Mr. Happel, individually and in his sales capacity, that the

11   conduct of Chiron, as described above, was illegal and improper.

12           40.    In response, Relator Robert Lalley's employment reviews were retroactively

13   changed, and he was fired, which were acts of retaliation.

14           41.    Similarly, Relator William Manos' employment was terminated, as part of a

15   redistricting, after he raised the issue of off-label sales.  This was done as an act of retaliation.

16           42.    At all times material to this Complaint, Defendants knew, or were grossly

17   negligent or reckless in not knowing, that their conduct as described herein was illegal and

18   improper.

19           43.    On information and belief, Defendants knowingly, as that term is defined by 31

20   U.S.C. § 3729(b), filed or caused to be filed with the federal government applications for the

21   payment of United States government funds, and, on information and belief, caused moneys of

22   the United States government to be paid to themselves for reimbursement of TOBI for off-label

23   uses which they illegally promoted, as described herein.

24                    **FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**

25                           **(Violation of 31 U.S.C. § 3729(a)(1))**

26           44.    The Qui Tam Plaintiff/Relators repeat the allegations of Paragraphs 1 - 42

27   contained in this Complaint.

28           45.    Defendants presented to, or caused to be filed with, the United States government

13

1   claims with knowledge of their falsity, or with grossly negligent or reckless disregard of facts

2   and conditions that would indicate that the reimbursement claims were inaccurate or

3   inappropriate and false, and caused payments for the reimbursement claims to be made by the

4   United States government.

5          46.    Defendants' illegal and improper conduct, as described herein, also deprived

6   federal assistance programs across the country of the informed, impartial judgment of medical

7   professionals – judgment on which the programs rely to allocate scarce financial resources to

8   provide necessary and appropriate care.

9          47.    In addition to the specifics set forth above, Defendants' conduct included

10   recruiting doctors to influence other physicians and developing research solely to boost market

11   share and the total value of the sales of TOBI, which was done without proper disclosure of the

12   financial relationship between the doctor and Chiron.  For example, Chiron's involvement with

13   clinical trials, medical journal research and reviews, educational grants and continuing medical

14   education was provided, in part, to obtain the assistance of doctors in the prescription of TOBI

15   for off-label applications.

16          48.    As a consequence of Defendants' unlawful scheme, patients who received the drug

17   for unapproved and unproven uses (which uses were then submitted for reimbursement by

18   government assistance programs such as Medicare) had no assurance that their doctors were

19   exercising their independent and fully-informed medical judgment, or whether the doctor was

20   instead influenced by misleading statements made by, or inducements provided by, Defendants.

21          49.    By reason of the violation of 31 U.S.C. § 3729(a)(1), Defendants have knowingly

22   or recklessly damaged the United States government in an as yet undetermined amount in an

23   amount in excess of $100,000,000.00.

24          **SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**

25          **(Violation of 31 U.S.C. § 3729(a)(2))**

26          50.    The Qui Tam Plaintiff/Relators repeat the allegation of Paragraphs 1- 48 contained

27   in this Complaint.

28          51.    Defendants presented claims to, or caused claims to be filed with, the United States

14

JANSSEN DOYLE, LLP

1    government with knowledge of their falsity, or with grossly negligent or reckless disregard to

2    facts and conditions that would indicate that the reimbursement claims were inaccurate or

3    inappropriate and false, and caused payments for the reimbursement claims to be made by the

4    United States government.

5        52.    By its conduct as described herein, Chiron subjected the poor, the elderly, the very

6    young and other persons insured by state and federal health care programs to experimental drug

7    applications which have not been determined to be safe and effective by enlisting physicians to

8    promote off-label uses of TOBI.

9        53.    Chiron employed Priority Healthcare to assist in obtaining reimbursement for off-

10    label use of TOBI.  Priority Healthcare knowingly presented, or caused to be presented, to the

11    United States Government false or fraudulent claims for payment or approval of TOBI for these

12    off-label applications which had been generated through Chiron's improper and illegal marketing

13    scheme.

14        54.    Priority Healthcare knowingly makes, uses, or causes to be made or used, a false

15    record or statement to get a false or fraudulent claim paid or approved by the United States

16    government for the off-label applications of TOBI, which had been generated through Chiron's

17    improper and illegal marketing scheme.

18        55.    By reason of the violation of 31 U.S.C. § 3729(a)(2), Defendants have knowingly

19    or recklessly damaged the United States government in an as yet undetermined amount.

20                 **THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**

21                         **(Violation of 31 U.S.C. § 3729(a)(3))**

22        56.    Qui Tam Plaintiff/Relators repeat the allegations of Paragraphs 1 - 54 contained in

23    this Complaint.

24        57.    The Defendants, in performing the acts set forth above, conspired to defraud the

25    United States government in violation of 31 U.S.C. § 3729(a)(3) by getting false or fraudulent

26    claims allowed or paid to the damage of the United States government.

27

28

JANSSEN DOYLE, LLP

15

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS

[PLAINTIFF STATE OF CALIFORNIA]
**(Violation of California Government Code Sections 12650-12656)**

58. Plaintiff State of California, by and through Qui Tam Plaintiffs/Relators, hereby incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by reference thereto.

59.     The conduct of Defendant Novartis, as herein alleged, was at all times herein mentioned in violation of <u>California Government Code Sections 12650-12656</u>, thereby entitling said Plaintiff to all damages, compensatory and otherwise, therein described.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS

[PLAINTIFF STATE OF ILLINOIS]
**(Violation of IL ST CH 740 § 175/1-175/8)**

60.     Plaintiff State of Illinois, by and through Qui Tam Plaintiffs/Relators, hereby incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by reference thereto.

61.     The conduct of Defendant Novartis, as herein alleged, was at all times herein mentioned in violation of <u>IL ST CH 740 § 175/1-175/8</u>, thereby entitling said Plaintiff to all damages, compensatory and otherwise, therein described.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS

[PLAINTIFF STATE OF FLORIDA]
**(Violation of FL ST §§ 68.081-68.092)**

62.     Plaintiff State of Florida, by and through Qui Tam Plaintiffs/Relators, hereby incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by reference thereto.

63.     The conduct of Defendant Novartis, as herein alleged, was at all times herein

JANSSEN DOYLE, LLP

16

1    mentioned in violation of <u>FL ST §§ 68.081-68.092</u>, thereby entitling said Plaintiff to all damages,

2    compensatory and otherwise, therein described.

3               **SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS**

4                    [PLAINTIFF STATE OF TEXAS]
5                 **(Violation of TX HUM RES §§ 32.039-36.110)**

6

7        64.      Plaintiff State of Texas, by and through Qui Tam Plaintiffs/Relators, hereby

8    incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by

9    reference thereto.

10        65.      The conduct of Defendant Novartis, as herein alleged, was at all times herein

11    mentioned in violation of <u>TX HUM RES §§ 32.039-36.110</u>, thereby entitling said Plaintiff to all

12    damages, compensatory and otherwise, therein described.

13               **EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS**

14                  [PLAINTIFF STATE OF GEORGIA]
15               **(Violation of GA ST §§ 49-4-168.1-168.6)**

16        66.      Plaintiff State of Georgia, by and through Qui Tam Plaintiffs/Relators, hereby

17    incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by

18    reference thereto.

19        67.      The conduct of Defendant Novartis, as herein alleged, was at all times herein

20    mentioned in violation of <u>GA ST §§ 49-4-168.1-168.6</u>, thereby entitling said Plaintiff to all

21

22    damages, compensatory and otherwise, therein described.

23                **NINTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS**

24               [PLAINTIFF STATE OF TENNESSEE]
25                **(Violation of TN ST §§ 4-18-101-108)**

26        68.      Plaintiff State of Tennessee, by and through Qui Tam Plaintiffs/Relators, hereby

27    incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by

28    reference thereto.

JANSSEN DOYLE, LLP

AMENDED COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.*);
RELATED STATE CLAIMS AND DEMAND FOR JURY

69.     The conduct of Defendant Novartis, as herein alleged, was at all times herein mentioned in violation of <u>TN ST §§ 4-18-101-108</u>, thereby entitling said Plaintiff to all damages, compensatory and otherwise, therein described.

## TENTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS

[PLAINTIFF STATE OF VIRGINIA]
**(Violation of VA ST §§ 8.01-216.1 -216.190)**

70.     Plaintiff State of Virginia, by and through Qui Tam Plaintiffs/Relators, hereby incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by reference thereto.

71.     The conduct of Defendant Novartis, as herein alleged, was at all times herein mentioned in violation of <u>VA ST §§ 8.01-216.1-216.19</u>, thereby entitling said Plaintiff to all damages, compensatory and otherwise, therein described.

## ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS

[PLAINTIFF STATE OF MASSACHUSETTS]
**(Violation of MA ST 12 §§ 5A-5O)**

72.     Plaintiff State of Massachusetts, by and through Qui Tam Plaintiffs/Relators, hereby incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by reference thereto.

73.     The conduct of Defendant Novartis, as herein alleged, was at all times herein mentioned in violation of <u>MA ST 12 §§ 5A-5O</u>, thereby entitling said Plaintiff to all damages, compensatory and otherwise, therein described.

## TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS

[PLAINTIFF STATE OF NEW YORK]
**(Violation of NY STATE FIN §§ 187-194)**

74.     Plaintiff State of New York, by and through Qui Tam Plaintiffs/Relators, hereby incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by

18

reference thereto.

75.     The conduct of Defendant Novartis, as herein alleged, was at all times herein mentioned in violation of NY STATE FIN §§ 187-194, thereby entitling said Plaintiff to all damages, compensatory and otherwise, therein described.

## THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT NOVARTIS

[PLAINTIFF STATE OF MICHIGAN]
**(Violation of MI ST 400.601-610a)**

76.     Plaintiff State of Michigan, by and through Qui Tam Plaintiffs/Relators, hereby incorporates each and every allegation of Paragraphs 1 through 57 of Plaintiff's Complaint by reference thereto.

77.     The conduct of Defendant Novartis, as herein alleged, was at all times herein mentioned in violation of MI ST 400.601-610a, thereby entitling said Plaintiff to all damages, compensatory and otherwise, therein described.

## PRAYER FOR RELIEF

78.     WHEREFORE, Plaintiff, United States of America ex rel. Relators Robert M. Lalley, Courtney Davis and William Manos prays that judgment be entered against Defendants, and each of them jointly and severally, for damages and otherwise as follows:

a.          In an amount, presently indeterminable, but in excess of $100,000,000.00, on the First, Second and Third Claims, for violation of 31 U.S.C. § 3729(a)(1), (2) and (3); and that such sum be duly trebled, in addition to a fine of not less than $5,000 per violation and not more than $10,000, together with attorneys' fees and costs;

b.          In addition, Plaintiffs pray for such further and additional relief at law or in equity that this Court may deem appropriate or proper.

79.     WHEREFORE, Plaintiff States ex rel. Relators Robert M. Lalley, Courtney Davis and William Manos pray that judgment be entered against Defendants, and each of them jointly and severally, for damages and otherwise as follows:

19

JANSSEN DOYLE, LLP

a.   In an amount, presently indeterminable, but in excess of $100,000,000.00, on the Fourth through Thirteenth Claims, for violation of the state laws therein alleged; and for attorneys' fees and costs, where appropriate under each State's law;

b.   In addition, Plaintiffs pray for such further and additional relief at law or in equity that this Court may deem appropriate or proper.

## JURY DEMAND

Plaintiffs and Qui Tam Plaintiff/Relators demand a trial by jury on all issues so triable.

Dated:  November 25, 2008                    Respectfully submitted,


By: _____
       Richard P. Doyle, Jr.
       Attorneys for Plaintiff,
       United States of America ex rel.
       and
       Plaintiffs/Relators
       Robert M. Lalley,
       Courtney Davis and
       William Manos


By: _____
       Rene Tatro
       Attorneys for Plaintiff,
       United States of America ex rel.
       and
       Plaintiffs/Relators
       Robert M. Lalley,
       Courtney Davis and
       William Manos

20

AMENDED COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.*);
RELATED STATE CLAIMS AND DEMAND FOR JURY

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed in the office of a member of the bar of this court at whose direction the service was made. My business address is JANSSEN DOYLE LLP, 140 Brookwood Drive, Suite 102, Orinda, CA 94563. On **November 25, 2008,** I served the following document(s) by the method indicated below:

**COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 et seq.); AND DEMAND FOR JURY**

( ) by transmitting via facsimile on this date from fax number (925) 295-1801 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing.

( ) VIA HAND DELIVERY

(X) by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

JOSEPH P. RUSSONIELLO
United States Attorney
JOANN M. SWANSON
Chief, Civil Division
SARA WINSLOW
STEVEN J. SALTIEL
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102

JOYCE R. BRANDA
JAMIE A. YAVELBERG
JESSICA S. CHAMPA
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed at Walnut Creek, California on **November 25, 2008.**

Laura Morrison

21

AMENDED COMPLAINT FOR DAMAGES (FALSE CLAIMS ACT, 31 U.S.C. § 3729 et seq.);
RELATED STATE CLAIMS AND DEMAND FOR JURY